1
2
3
4
5
6
7                    **IN THE UNITED STATES DISTRICT COURT**
8                      **FOR THE DISTRICT OF ARIZONA**
9
10   Richard Jo Carrillo,                    No. CV-14-02325-TUC-DCB (BPV)
11              Petitioner,                  **REPORT & RECOMMENDATION**
12   v.
13   Charles L Ryan, et al.,
14              Respondents.
15

16          Pending before the Court is Petitioner's *pro se* Petition under 28 U.S.C. § 2254 for

17   a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty). (Doc. 1).

18   Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus.[1] (Doc.

19   9). Petitioner did not file a Reply, although permitted to do so.

20          Pursuant to the Rules of Practice of this Court, this matter was referred to the

21   undersigned Magistrate Judge for a Report and Recommendation. For the following

22   reasons, the Magistrate Judge recommends that the District Court dismiss the Petition as

23   procedurally defaulted or, alternatively, dismiss and deny the Petition.

24   **I.    FACTUAL & PROCEDURAL BACKGROUND**

25          **A.    CONVICTION AND DIRECT APPEAL**

26          Petitioner was convicted after a jury trial of five counts of aggravated DUI and he

27   ────────────────────

28          [1] Respondents also filed a copy of the transcript of voir dire proceedings in
     response to the Court's order directing them to do so. (*See* Docs. 16 (Order), 17
     (transcript)).

was sentenced to concurrent terms of 11 years of imprisonment for each of the five convictions. (Answer at 2 (citing Answer, Exh. A)).

Petitioner, through counsel, directly appealed his convictions, arguing that the trial court erred by: (1) "disclosing to the jury the fact of [Petitioner's] prior DUI convictions"; (2) denying Petitioner's motion for a mistrial based on the trial court's disclosure; and (3) denying Petitioner's challenge to the jury panel for cause. (Answer, Exhs. B at ii (all capitalization omitted)). The appellate court granted review, and although it denied on the merits Petitioner's arguments regarding disclosure to the jury about the charge involving prior DUI convictions, the appellate court vacated Petitioner's conviction and sentence for count two of the superseding indictment because the conviction was for a lesser-included offense of Petitioner's conviction for count three. (Answer, Exh. A).

### B. POST-CONVICTION RELIEF PROCEEDINGS

In March 2012, Petitioner initiated post-conviction relief proceedings. (Answer at 3). After Petitioner's appointed counsel informed the trial court that he could find no colorable issues to argue and successfully moved to withdraw, Petitioner filed a *pro se* Petition for Post-Conviction Relief ("PCR Petition"). (Answer, Exhs. F, G, H, I). Petitioner raised the following grounds:

1. The trial court erred by empaneling an eight-person jury, instead of a twelve-person jury;

2. The trial court erred by admitting the BAC evidence because it was seized without a warrant;

3. Trial counsel was ineffective by failing to assert that Petitioner was subjected to double punishment in violation of the Double Jeopardy Clause, and the trial court erred on this issue as well;

4. Appellate counsel and PCR counsel were ineffective for failing to challenge:

   a. the introduction of evidence resulting from the warrantless seizure of

1  Plaintiff's blood;

2  b.  the state's failure to notify or assist Petitioner with regard to his right

3  to obtain exculpatory evidence;

4  c.  "[t]he introduction of Petitioner's involuntary statements taken in

5  violation of *Miranda*";

6  d.  the introduction of testimony from Officers Luna and Figueroa.

7  (Answer, Exh. I).

8  The trial court dismissed the PCR Petition, holding that claims 1 through 3

9  alleging err by the trial court were precluded under Ariz.R.Crim.P. 32.2(a), because they

10  could have been raised during earlier proceedings, but were not.  (Answer, Exh. K).  The

11  court went on to summarily dismiss Petitioner's claims of ineffective assistance of

12  counsel, finding that Petitioner did not present material facts that would entitle him to

13  relief.  (*Id.*).

14  Petitioner sought appellate court review.  (Answer, Exh. L).  The appellate court

15  affirmed the trial court's denial of Petitioner's PCR Petition, and also went on to state

16  that Petitioner's claims of ineffective assistance of PCR counsel were not cognizable

17  because he had no constitutional right to effective assistance of counsel in PCR

18  proceedings.  (Answer, Exh. M).  Petitioner did not seek review from the Arizona

19  Supreme Court.  (*See* Answer, Exh. N).

20  **C.  PETITIONER'S FEDERAL HABEAS PETITION**

21  In his federal habeas petition, Petitioner raises the following grounds for relief:

22  **Ground I**.  Trial counsel was ineffective because he did not: (1) inform

23  Petitioner of his trial date, which resulted in Petitioner being tried in

24  absentia; (2) "investigate the facts of the case"; (3) adequately discuss the

25  nature of the charges with Petitioner; (4) discuss strategy with Petitioner,

26  including possible defenses, suppression, consequences of trial, or

27  "alternative sentence"; (5) exercise peremptory challenges; and (6) present

28  a diminished capacity defense (Petition at 6);

**Ground II**. Defendant's Fourth Amendment Rights, under the U.S. Constitution, were violated when his blood was drawn without a warrant;

**Ground III**. The trial court violated Petitioner's Fourteenth Amendment right to Due Process under the U.S. Constitution when it "disclosed the fact of [Petitioner's] prior DUI offenses to the jury during voir dire" and denied Petitioner's motion for a mistrial and challenge to the jury panel based on the trial court's disclosure (*Id.* at 8); and

**Ground IV**. Petitioner's Fifth, Sixth, and Fourteenth Amendment Rights were violated when officers questioned him after his arrest and while he was in restraints.

Respondents do not contest the timeliness of the Petition. (*See generally* Answer). They argue that "[a]ll of the claims presented in [Petitioner's federal habeas petition]... are procedurally defaulted without excuse." (Answer at 8).

## II. DISCUSSION

### A. STANDARD FOR EXHAUSTION AND PROCEDURAL DEFAULT

Because Petitioner's federal habeas petition was filed after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), 28 U.S.C. § 2254 ("§ 2254). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).

Under the AEDPA, a writ of habeas corpus cannot be granted unless it appears that the petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982). To exhaust state court remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 n. 3 (9th Cir.2005) (quoting *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999)).

A claim is fairly presented if the petitioner has described the operative facts and the federal legal theory on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). A petitioner must clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). He must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

In Arizona, there are two procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief ("PCR") proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and the petitioner can justify his omission of the claim from a prior petition or his failure to present the claim in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (explaining that the district court must consider whether the claim could be pursued by any presently available state remedy). Therefore, in the present case, if there are claims that were not raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. *See*

*Ortiz*, 149 F.3d at 931. If no remedies are currently available, Petitioner's claims are "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

If there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). It is well established that Arizona's preclusion rule is independent of federal law, *see Stewart v. Smith*, 536 U.S. 856, 860 (2002), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim. *See Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.), *cert. denied*, 135 S. Ct. 710 (2014) (Arizona's waiver rules are independent and adequate bases for denying relief); *Ortiz*, 149 F.3d at 932 (Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (finding Arizona not "irregular" in application of procedural default rules); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same).

Nonetheless, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). As a general matter, however, the Court will not review the merits of a procedurally defaulted claim unless the petitioner demonstrates legitimate cause for his failure to exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Generally, "cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *accord Coleman*, 501 U.S. at 753. "Prejudice" is actual harm resulting from the alleged constitutional error or violation. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). To establish prejudice resulting from a procedural default, the petitioner bears the burden of

showing not merely that the errors at his trial were possibly prejudicial, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. *United States v. Frady*, 456 U.S. 152, 170 (1982).

A habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (citing *Schlup v. Delo*, 513 U.S. 298, 321(1995)). *See also Majoy v. Roe*, 296 F.3d 770, 776–777 (9th Cir. 2002) (analyzing this exception in a non-capital case). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup*, 513 U.S. at 327; *see also*, *Murray,* 477 U.S. at 496; *Cook*, 538 F.3d at 1028. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial.'" *Cook*, 538 F.3d at 1028 (quoting *Schlup*, 513 U.S. at 324).

**B.    GROUND I**

In Ground I, Petitioner claims that trial counsel was ineffective for failing to: (1) inform Petitioner of his trial date, resulting in Petitioner being tried in absentia; (2) investigate regarding the facts of the case; (3) adequately discuss the nature of the charges; (4) discuss strategy, possible defenses, suppression and sentencing issues, and consequences of going to trial; (5) exercise peremptory challenges; and (6) present a diminished capacity defense.  Respondents argue that although Petitioner did allege ineffective assistance of trial, appellate and PCR counsel in his PCR Petition, he did not allege the same grounds before the state court as he alleges before this Court.  According to Respondents, because Petitioner did not present the state court with the claims he raises here, he failed to "fairly present" his Ground I claims, rendering Ground I unexhausted and, ultimately, procedurally defaulted.

Although Petitioner alleged that trial counsel provided ineffective assistance in his PCR Petition, that claim involved trial counsel's alleged failure to assert Petitioner's

rights against double punishment[2] and in no way relates to the claim alleged in Petitioner's Ground I.    (*See* Answer, Exh. I at 6, 19-20; Answer, Exh, L at 19-20). "In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.' *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009). As a general matter, each 'unrelated alleged instance [] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan,* 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir.2005)).  Thus, Petitioner's assertion of a claim of a constitutional violation based on one set of facts presented to the state courts, does not exhaust other claims alleging violation of the same constitutional provision based on different facts that were not presented to the state courts.  *See Date v. Schriro*, 619 F.Supp.2d 736, 788 (D.Ariz. 2008) ("Ineffective assistance claims different from those presented to the state courts are precluded from consideration on habeas corpus review . . . . Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts."); *see also Moormann*, 426 F.3d at 1056–57 (9th Cir. 2005) (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review).

Under these circumstances, Respondents are correct that Petitioner's failure to fairly present to the Arizona courts the claims he raises in Ground I results in the conclusion that Petitioner has failed to exhaust his state court remedies.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim.").  Further, Petitioner would no longer have a remedy if he returned to the Arizona courts to present the claims he raises

---

[2] In ruling on the PCR Petition, the state trial court indicated that Petitioner also raised a claim of ineffective assistance of trial counsel for failing to object to the empanelment of an eight-person jury. (Petition, Exh. K at 2).  This Court does not read Petitioner's PCR Petition as raising such a claim, but even if it did, that claim in no way serves to exhaust the claims raised in Ground I of the instant federal habeas petition.

here. Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure provides that a defendant is precluded from post-conviction relief on any ground that was waived in any previous collateral proceeding. Further, the time has now passed to seek such review. *See* Ariz.R.Crim.P. 32.4(a); *see also Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir 2002) (a state post-conviction action is futile when it is time-barred). Nor do the claims qualify for any of the timeliness exceptions. *See* Ariz.R.Crim.P. 32.1(d)-(h). Thus, any additional petition would be subject to summary dismissal. *See State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones,* 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzalez*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion). The procedural timeliness bar of Rule 32.4(a) is clear, consistently applied, and well established. *Powell v. Lambert,* 357 F.3d 871 (9th Cir. 2004); *see e.g.*, *Rosario,* 195 Ariz. 264, 987 P.2d 226 (where petitioner did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Jones,* 182 Ariz. at 434, 897 P.2d at 736; *see also Wagner v. Stewart,* 2008 WL 169639, *9 (D. Ariz. Jan. 16, 2008). On the instant record, Petitioner's claims raised in his federal habeas Petition are procedurally defaulted. *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) ("[W]here a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted.") (quoting *Coleman*, 501 U.S. at 735 n. 1 ); *Park v. California*, 202 F.3d 1146, 1150–51 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired); *Parra v. Ryan*, No. 2014 WL 3747635 at *4 (D. Ariz. July 30, 2014) (same).

Petitioner has not argued or otherwise shown cause or prejudice to overcome the procedural default in this case. Nor has he argued that a fundamental miscarriage of justice has occurred which would require this Court to address his claims on the merits. Accordingly, the District Court should dismiss Petitioner's Ground I as procedurally defaulted.

C.     **GROUND II**

In Ground II, Petitioner argues that his Fourth Amendment right against unreasonable searches and seizures was violated when his blood was drawn for evidence without a warrant.  Respondents correctly assert that Petitioner raised this claim in his PCR Petition; however, the state trial court rejected it as precluded under Ariz.R.Crim.P. 32.2(a) because Petitioner could have raised the claim on direct appeal but did not. (Answer, Exh. K at 2).  On review, the Arizona Court of Appeals held that the claim was precluded under Ariz. R. Crim. P. 32.2(a)(3).  (Answer, Exh. M at 3-4).

Under Ariz.R.Crim.P. 32.2(a)(3), claims that could have been but were not raised on direct appeal are precluded from consideration in a post-conviction relief proceeding because they are considered waived. "Preclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.'" *Cook*, 538 F.3d at 1025 (quoting *Stewart*, 536 U.S. at 860) (footnote omitted).  Additionally, as discussed *supra,* the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim.  *See Hurles,* 752 F.2d at 780; *Ortiz*, 149 F.3d at 932; *Poland*, 117 F.3d at 1106; *Martinez–Villareal*, 80 F.3d at 1306 (previous version of Arizona's preclusion rules "adequate")).  Consequently, Respondents are correct that Petitioner's Ground II claim is procedurally defaulted because the state courts found it was precluded on state procedural grounds. *Coleman*, 501 U.S. at 729–30.

Petitioner has not argued or otherwise shown cause or prejudice to overcome the procedural default of Ground II.  Nor has he argued that a fundamental miscarriage of justice has occurred which would require this Court to address his claims on the merits.  Accordingly, Petitioner's procedural default cannot be excused and the District Court should dismiss Petitioner's Ground II as procedurally defaulted.

## D.    GROUND III

Petitioner claims in Ground III that his "Fourteenth Amendment [sic] to the Constitution of the United States of America was violated" because the state deprived him of due process.  (Petition at 8).  Petitioner argues that the trial court "committed fundamental error" by disclosing to the jury "the fact of" his prior DUI convictions and that the court "abused its discretion" when it denied his motion for a mistrial and his challenge to the jury panel for cause.  (*Id.*).

Respondents assert that although Petitioner raised a similar claim during direct appeal, he made no mention of the United States Constitution and the court addressed the matter as a state claim.  (Answer at 10-11).  Respondents argue that Petitioner's Ground III is procedurally defaulted because Petitioner did not fairly present a federal claim to the state court.

### 1.    PROCEDURAL DEFAULT

All of Petitioner's arguments raised on direct appeal addressed jury selection. Petitioner argued that:  (1) the trial court "committed fundamental error in reciting [his] prior DUI convictions to the jury during voir dire[]", which resulted in statements by the prospective jurors that "injected a tone of suspicion and bias which were surely prejudicial and damaging to [Petitioner's] right to a fair and impartial jury, and thus denied [Petitioner] a fair trial" (Answer, Exh. B at 5); (2) the trial court abused its discretion in denying his motion for mistrial based upon the court's disclosure about his prior convictions for DUI; and (3) the trial court abused its discretion in denying his challenge to the jury for cause based upon their knowledge about his prior convictions, which rendered Petitioner unable to "get a fair trial" (*Id.* at 16) before an unbiased jury. (*See id.* at 13-17).

To satisfy the exhaustion requirement, a federal habeas petitioner must have alerted the state court to the fact that he is asserting claims under the United States Constitution.  *See Duncan v. Henry,* 513 U.S. 364, 365-66 (1995) (failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies); *Fields v. Waddington,* 401 F.3d 1018, 1020-21 (9th Cir. 2005) ("Petitioner

fairly presented federal claims only if he alerted the state court that his claims rested on the federal Constitution."). Generally, a petitioner alerts the state court to the federal nature of his claim by specifying particular provisions of the federal Constitution or statutes, by citing to federal case law, or by citing a state case analyzing the federal constitutional issue. *Id.* at 1021; *Peterson,* 319 F.3d at 1158. Here, Respondents correctly point out that Petitioner did not cite or mention the federal constitution in his appellate briefing. Although Petitioner mentioned his "right to a fair and impartial jury" (Answer, Exh. B at 5), and that he was denied "a fair trial" (*Id.*; *see also id.* at 16), he did not relate such references to a federal constitutional claim. It is well-settled that reference to a broad constitutional concept such as a "fair trial" are not sufficient to establish exhaustion. *See Id.* at 1022 (merely mentioning broad constitutional principles such as "'fair trial'" does not suffice to exhaust federal claims); *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999) ("general appeals to broad constitutional principles, such as due process, equal protection, and *the right to a fair trial*, are insufficient to establish exhaustion." (emphasis added)). "Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004).

What is left, then, is consideration of whether the state cases cited by Petitioner in his appellate brief satisfied the exhaustion requirement.[3] In determining whether a petitioner has exhausted a federal issue by citation of a state decision, the Ninth Circuit has instructed that:

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, . . . the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey,* 386 F.3d at 912 n.13; *accord Fields,* 401 F.3d at 1022. None of the state cases

---

[3] Petitioner did not cite any cases in his reply brief on appeal. (*See* Answer, Exh. D).

cited by Petitioner in his appellate brief is accompanied by any signal or other textual mention or reference to a federal claim. Moreover, review of the state cases cited in Petitioner's brief reflect that the majority of them did not discuss federal constitutional concerns with regard to jury issues. Only two state cases cited in Petitioner's state brief merit further discussion.

Petitioner cited *State v. Henderson,* 210 Ariz. 561, 568-69, 115 P.2d 601, 608-09 (2005), and indicated that the portion of *Henderson* on which he relied cited *State v. Bible,* 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1983), for the premise that: "[The Arizona] Supreme Court has also held that in a case in which voir dire error is claimed that a defendant must show how the court could have conducted voir dire and how the absence of such a procedure prejudiced him." (Answer, Exh. B at 11). One of the issues raised in *Bible* was whether the defendant had been denied a fair trial by pretrial publicity or the trial atmosphere. The portion of the *Bible* opinion cited in *Henderson* discussed whether "the voir dire procedures constitute[d] fundamental error[]" under Arizona law, and made no reference to the U.S. Constitution, *Bible,* 175 Ariz. at 572, 858 P.2d at 1175. (*See* Answer, Exh. B at 11). The portion of the *Bible* opinion cited in *Henderson,* in turn cited several state cases that discussed Arizona's fundamental error analysis. The *Bible* court also cited one U.S. Supreme Court case as follows:

> Given the high profile of this case, the passions it stirred, and the pretrial publicity, if requested by Defendant, the court might well have conducted a more substantial oral voir dire. The record, however, does not show that any of the jurors seated demonstrated a closed mind; they all stated they could follow the court's instructions and decide the case on the evidence. While such statements are not always conclusive and are to be tested by voir dire, *Irvin* [*v. Dowd*], 366 U.S. 717] at 727–28, 81 S.Ct. at 1645 [(1961)], on this record rejecting these statements would require sheer speculation on our part.

*Id.* The mere reference to *Irvin* at this point in the *Bible* opinion does not serve to exhaust Petitioner's claim. The portions of the opinions cited did not indicate that either the *Henderson* court or the *Bible* court analyzed state and federal constitutional issues, nor did Petitioner's brief indicate whether the opinions involved any consideration of federal issues. *See Fields,* 401 F.3d at 1022; *Casey,* 386 F.3d at 912 n. 3.

- 13 -

Elsewhere in Petitioner's appellate brief, when arguing that the trial court "abused its discretion in denying [Petitioner's] challenge to the jury for cause when the jury panel members had heard repeated prejudicial comments by jurors regarding [Petitioner's] prior DUI convictions", Petitioner cited *State v. Glassel,* 211 Ariz. 33, 45, 116 P.3d 1198, 1205, *corrected on denial of reconsideration,* 211 Ariz. 370, 121 P.3d 1240 (2005), in a string cite together with *State v. Trostle,* under the heading "Standard of review[]" for the premise that: "The appellate court reviews rulings in jury selection for an abuse of discretion." (Answer, Exh. B. at 14 (underline omitted)). The portion of *Glassel* cited by Petitioner restates the argument advanced by the defendant in that case: that under *Morgan v. Illinois,* 504 U.S. 719, 728 (1993), the defendant had the right to question prospective jurors to reveal potential jurors who will never vote for leniency. *Glassel,* 211 Ariz. at 45, 116 P. 3d. at 1205; *see also Glassel,* 211 Ariz. at 370, 121 P.3d 1240 ("*Morgan* gives defendants the right to determine whether potential jurors would automatically vote for death once a defendant has been found guilty of capital murder."). The *Glassel* defendant also relied on Arizona Rules of Criminal Procedure. *Id.* After summarizing the defendant's argument, the *Glassel* court went on to identify the following standard:

> We review a trial court's rulings on *voir dire* of prospective jurors for abuse of discretion. *State v. Trostle*, 191 Ariz. 4, 12, 951 P.2d 869, 877 (1997). We also review motions to strike the panel for abuse of discretion. *State v. Carlson*, 202 Ariz. 570, 579, ¶ 29, 48 P.3d 1180, 1189 (2002).

*Id.*

The inquiry as to whether a habeas petitioner has fairly presented a federal claim to the state court "is not mechanical, but requires examination of what the petitioner said and the context in which []he said it. To exhaust a federal constitutional claim in state court, a petitioner has to have, at the least, explicitly alerted the court that []he was making a federal constitutional claim." *Galvan v. Alaska Dept. of Corrs.,* 397 F.3d. 1198, 1204-05 (9th Cir. 2002). A fair reading of Petitioner's counseled appellate brief reflects that Petitioner cited *Glassel* to support an "abuse of discretion" review of his claim, which the appellate court adopted in his case (*see* Answer, Exh. A at 5 ("We

review the court's rulings on motions for a mistrial or to dismiss the jurors for an abuse of discretion.")). Although *Glassel* acknowledged a federal constitutional component to the voir dire issue, the issue presented in the portion of the decision cited by Petitioner was not germane to his argument on appeal, nor did Petitioner alert the state court in any way that he was relying on *Glassel* to support a claim under the U.S. Constitution.

Consequently, Petitioner failed to exhaust the federal claim he seeks to raise before the Court. For the same reasons as discussed above with regard to Ground I, Petitioner is precluded under Ariz. R. Crim. P. 32.3(a)(3) from returning to state court to raise his claim as a federal claim. Petitioner has not demonstrated cause or prejudice to excuse his default, nor does he demonstrate a miscarriage of justice. The District Court should dismiss Ground III as procedurally defaulted.

## 2. ALTERNATIVE RULING ON THE MERITS

Alternatively, Petitioner's Ground III has no merit.[4] Petitioner raises three issues in Ground III: (1) "the trial court committed fundamental error in disclosing to the jury the fact of [his] prior DUI convictions"; (2) he was deprived of due process when "the trial court abused its discretion" in denying his motion for mistrial based on the fact that the court had disclosed his prior conviction during voir dire; and (3) "the trial court abused its discretion in denying [Petitioner's] challenge to the jury for cause when the jury panel members had heard repeated prejudicial comments by jurors regarding [his] prior DUI convictions." (Petition at 8).

### a. THE VOIR DIRE

Pertinent to Petitioner's Ground III claims, the trial court informed the prospective jurors that Petitioner was

> charged with committing driving under the influence on June 24th of 2009. And this is aggravated driving under the influence. There are several counts. Some of them involve driving under the influence while a driver's

---

[4] AEDPA provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Granberry v. Greer,* 481 U.S. 129, 134-35 (1987); *Cassett v. Stewart,* 406 F.3d 614, 623-24 (2005). Such review is de novo. *Lewis v. Mayle,* 391 F.3d 989, 996 (9th Cir. 2004).

license was suspended, canceled, revoked, refused. Others involve driving under the influence within 84 months. That would be a third violation within 84 months. And one count involves driving under the influence with an illegal drug other than alcohol.

(Exh. P (Doc. 17) at 41). Soon thereafter, the trial court inquired whether "anything about the nature of the case make it difficult for any of you to serve as a fair and impartial juror?" (*Id.* at 42).

Prospective juror Dullum stated that she had worked in substance abuse case management, which involved "dealing with substance abuse people…on a one-on-one basis. . . ." (*Id.*). Ms. Dullum did not believe she could be fair, due to the nature of her work and "everything that I've had to deal with in my job, and seeing the things that go on on the back side of it." (*Id.*). The court excused Ms. Dullum. (*Id.*).

Another prospective juror, Mr. Beeley, stated that both of his grandparents had been killed by drunk drivers and, upon the court's inquiry, assured the court that he could put aside that experience and make a decision based on the facts and evidence presented in Petitioner's case. (*Id.* at 43).

Next, prospective juror Flynn stated that she worked as a "CNA" with developmentally disabled, injured and sick people, some of whom were children "injured, and some that were brain dead, because of drunk drivers. And I don't even think that this defendant would want me on a jury." (*Id.*). The following exchanged occurred:

THE COURT: So you don't believe you could put aside those feelings and make a decision based on the information presented in this case?
PROPSECTIVE JUROR: No. This person has had so many counts against them already, you know, why is he here?

(*Id.*). The court excused Ms. Flynn. (*Id.* at 44).

Defense counsel then asked to approach the bench. He requested that "something . . . be said about the presumption of innocence[]" because "there's a lot of propagandizing going on in the jury." (*Id.*).

The court then addressed the prospective jurors:

[M]embers of the jury, you've heard some people express their opinions. It's important that you understand very clearly that the defendant

- 16 -

in this case is innocent until proven guilty, and the charges against the defendant are not to be taken by any juror as proof that the defendant did any of the things that are charged. If that were the case, we would not even be needing a jury here today.

But that is the point of the jury system, is that the jury needs to listen to the evidence and testimony presented, consider the exhibits, and then make a decision based upon the facts that you find as jurors, and the law that I give you. And that is how a determination is made as to whether a defendant is guilty.

But up until that point, the defendant is presumed to be innocent. So the charges are not be taken as proof that the defendant did anything.

It's also important that you're paying attention and not talking to each other during this process of jury selection. And I'd appreciate it if you would kind of keep your silence unless you have something to say in response to one of the questions.

Is there anyone else who feels that the charges, the nature of the charges would make it difficult to be impartial in this case?

(*Id.* at 44-45).

Prospective juror Durham responded that her friend was hurt in "a drinking and driving accident" and she had "a lot of pent-up feeling towards it. And I honestly don't think I'd be a really good candidate to be a juror, just based on that alone. I wouldn't be. . . fair . . . because of these feelings." (*Id.* at 45-46). When the court asked Ms. Durham whether she would be able to set aside those feelings and make a decision based on the facts presented at trial, Ms. Durham stated that although she could try, her emotions may "take over[.]" (*Id.* at 46). The court excused Ms. Durham. (*Id.*).

No additional hands were raised. The court next asked: "Without having heard any evidence in this case, is there anyone who has already formed an opinion or decided that the defendant is guilty or not guilty, based on the nature of the charges or some other reason?" (*Id.*).

Prospective juror Miles stated that she "kind of already formed an opinion that he is, because he's already had priors. I don't know if it would be fair to him for me to sit on this trial." (*Id.*). In response to the court's inquiry whether she could set aside her opinion and make a decision based on the evidence presented at trial, Ms. Miles responded: "Probably not." (*Id.* at 47). She went on to state that she had a low opinion

of her family members who drink and drive and "I feel like I wouldn't be fair to this gentleman." (*Id.*) The court excused Ms. Miles. (*Id.*).

Next, prospective juror Hernandez stated that he "echo[ed]" Ms. Miles' statements: "I think everyone in the courtroom formed some kind of opinion, hearing the facts you have already, because it's not just one incident, but more than one incident. But I can try." (*Id.*). The court stressed that the jury was charged with deciding "whether, on this particular incident, on this particular day, the State can prove beyond a reasonable doubt that indeed the defendant was driving under the influence of an intoxicant. . . . Your job would be to listen to the facts and the evidence presented and decide whether, on that day, that's what he was doing. Do you believe that you can do that?" (*Id.* at 47-48). Mr. Hernandez responded: "I could do that, but I think your question was if I formed an opinion what I stated already, and I have formed an opinion." (*Id.* at 48*).* When the court inquired whether Mr. Hernandez could set that opinion aside in making his decision, Mr. Hernandez responded "I can try. Yes I can try." (*Id.*).

The court then recessed to chambers with counsel. (*Id.* at 49). Defense counsel requested a ruling on a mistrial because of "a lot of conversation and carrying on in the jury pool." (*Id.* at 49). He went on to state that prior to the court's admonition about the presumption of innocence, a juror who had been struck for cause whose name counsel could not recall, "essentially said, why is he being given a third chance? An unnamed member of the pool said that. At that point, that's when I approached the bench and voiced my concerns." (*Id.*). Defense counsel requested that the court "make some sort of record" to determine the substance of any conversation in the jury pool. (*Id.*). He pointed out that "there seems to have been enough conversation about this just brought out by jurors' comments—which again are totally proper[]", but which caused him concern "about the prospects of a fair trial." (*Id.* at 49-50). Defense counsel also expressed concern about "a considerable amount of chatter when we approached." (*Id.* at 53).

The prosecutor responded that the prospective jurors' answers were typical of those in DUI cases. (*Id.* at 50). He went on to say that although he did not "hear a significant

amount of cross talk" among the panel, he did hear someone say "That's right" "in response to one juror saying something about the defendant's prior." (*Id.*).

The court pointed out that counsel will

> be able to ask questions now, and I believe that you will have the opportunity to ferret out anyone who is biased. I normally, in a case like this, I would have said there's been a charge of DUI. Because one of the counts does involve the priors, I thought I better bring that one out, for the very reason that that might make people a bit more concerned about sort of already jumping to a conclusion.
>
> I don't know that we're going to get really many more problems with the jurors other than that response to that one question.
>
> And when we go out, if you feel strongly, I can ask, was there anyone who failed to state a bias, or who made a comment that was overheard that would indicate bias, if you want.

(*Id.* at 52-53; *see also id.* at 53 (the court also offered to admonish the panel not to talk amongst themselves)).

Defense counsel agreed with the court's suggested approach and stated "if this was ferreted out, there is no real issue of bias. But again, without that record, we don't know." (*Id.* at 53).

Upon returning to the courtroom, the court inquired of the prospective jurors whether "any of you now, with some reflection, [would] have said yes to any of [sic] questions that I've asked." (*Id.* at 58-59)*.* Prospective juror McDonald indicated that she was trying to be impartial, but she was "a strong supporter of Mothers Against Drunk Driving, and I've had a number of friends whose family members have gotten killed. . . . I'm feeling a little prejudiced, but I can try my best." (*Id.* at 59). Upon further questioning by the court, Ms. McDonald again said she would "try my best" to make a decision based upon the evidence at trial. (*Id.*).

The court next asked: "During the jury selection process, did anyone make comments about the case to any of the other jurors?" (*Id.* at 59-60). No one responded. (*Id.* at 60). The court went on to ask: "[A]t one point during the earlier selection process, a juror commented on a potential bias due to the allegations that the defendant had prior DUIs and one juror was overheard to say, 'That's right.' Would that juror, if you're still

here, identify yourself." (*Id.*). A prospective juror stated: "I think that was the lady that just left." (*Id.*).

Proceeding with voir dire, the court informed the panel that Petitioner was presumed by law to be innocent and was not required to prove his innocence. (*Id.* at 65). The court inquired whether anyone disagreed with that principal or believed it should not be the law. (*Id.*). There was no response. (*Id.*).

The court also inquired whether any of the prospective jurors, their close relatives or friends had ever been arrested, charged or convicted of any crime. (*Id.* at 74). Of the responses pertinent to Petitioner's Ground III claim, prospective juror Fisher was among those who responded.[5] (*Id.* at 75). Mr. Fisher stated that he had been cited for DUI in 2001 and that he preferred to speak with the judge in private about it. (*Id.*). The court did not immediately recess to chambers with Mr. Fisher, but instead continued with voir dire of the panel asking:

> THE COURT: Do any of you have any reason for feeling you could not be a fair and impartial juror in this case?
> (No response.)
> THE COURT: Okay. Mr. Fisher. That's what you want to discuss in private. I gather. Okay.
> If selected to sit on this case, do any of you feel for any reason you would be unable or unwilling to render a verdict solely on the evidence presented at trial.
> (No response.)

(*Id.* at 76-77). Later, in chambers, Mr. Fisher explained he could not be impartial based on his prior experience successfully fighting a DUI charge, and the court excused him.[6]

---

[5] With regard to DUI, prospective juror Hotelling stated he had prior DUI charges and that it would not affect his ability to be impartial in Petitioner's case. (Answer, Exh. P at 75-76).

[6] Mr. Fisher's comments, which were made outside the presence of the panel, included his opinion that

> with a lot of money and the right attorney, . . . you can be proven innocent no matter if you are guilty. . . . And I don't know, putting a man back on the street who has done this more than once—I think everybody deserves one chance. Multiple chances to continue to do the same thing, I don't agree with it, no matter how much money you have and how good your attorneys are to fight your case. So I'm opinionated on this, and I don't believe that I would, you know, do justice to the defendant.

(*Id.* at 79-82).

In open court after meeting in chambers with Mr. Fisher, the court permitted the prosecutor and defense counsel to question the prospective jurors. Defense counsel questioned Mr. Hernandez, who had indicated earlier that he had an opinion about the case. (Answer, Exh. P at 99). When asked to state his opinion, Mr. Hernandez responded:

> That if the guy is in trouble more than one time – somebody asked a question in the back, what are we doing here, then? I know. Innocent until proven guilty. But I had a relative who got in trouble by the law, and it was his first time, and so he was okay with it. He learned his lesson. He's doing better now.
> I know another incident, somebody killed a couple people by drunk driving. They were in trouble more than one time, and it sounded similar to what she said. And that was something public that, you know, you see on TV, stuff like that. Just speaking from the heart, I have an opinion. Just being honest.

(*Id.*). In response to further questioning from defense counsel, Mr. Hernandez stated that he "leaned towards. . ." thinking Petitioner was guilty. (*Id.* at 100). He also inquired: "was this the first time this happened to this individual?", to which defense counsel responded: "I can't really get into that. That's something that will come out in the evidence." (*Id.* at 101). Mr. Hernandez then replied: "Yes. So I guess until I heard all the evidence, I could probably make a better judgment . . . [whether he could disregard his opinion of guilt]. But I'm kind of leaning, from what the judge said, didn't sound like this was the first or second time, and it was more than one thing involved." (*Id.* at 101). Mr. Hernandez went on to discuss his work helping children to make good choices "and if they can see that people are held accountable for their actions and not given a third, fourth, fifth, sixth chance, then maybe it will be harder." (*Id.*). He concluded by saying: "I mean, I think, I can have an open mind. Present a good case, I can go with the defendant. I have an open mind. But I'm just telling you, answering your question." (*Id.* at 101-02). Mr. Hernandez later went back on record to clarify that "just because

(Answer, Exh. P at 79-80).

[Petitioner] was caught drinking and driving doesn't mean that I feel like he's a bad, an evil person." (*Id.* at 105 (also stating "there's people that drink and make good choices and have people drive for them.")). Later, during questioning of the panel, defense counsel asked Mr. Hernandez:

> [W]hat is some of the evidence that you want to hear about before you make your determination?
> [Mr. Hernandez]:   Just exactly what happened first, second and third, and what consequences he had to face, and then what choices he made after those consequences.

(Answer, Exh. P at 108).

Defense counsel also spoke to Mr. Beeley whose grandparents had been killed by a drunk driver. Mr. Beeley stated that as a result of the incident, he does not drink, smoke, take drugs or fraternize with people who do. (*Id.* at 103). When asked "What about the fact that you heard one of the charges is that this is his third time within seven years? Do you feel that possibly you already have an opinion of this case based on that?", Mr. Beeley responded:

> Based on that and based on the fact that, what, six officers are coming in to witness against him, I would say that I kind of feel right now he's guilty. He's a repeat offender. He's obviously shown in the past that he's had chances and he hasn't really taken advantage, and he's back in the judicial system.

(*Id.* at 104) However, when asked whether he "was going to have difficulty . . . in evaluating the evidence," Mr. Beeley answered:

> Like I said, I'm pretty sure I can be fair and impartial. I'm going to try my hardest. But like I say, how I was developed and brought up from a young age with regard to this matter, based on my grandparents, it's developed how I am as a person and how I perceive the world, and what I consider fair and objectionable.

(*Id.* at 104-05).

After both counsel finished questioning the panel, the court again instructed the prospective jurors:

> The duty of a jury is to determine the facts based on the evidence presented in court, and then reach a verdict by applying the law that the Court gives to the jury.

When you do that, you need to understand defendant is presumed to be innocent and that the charges themselves are not evidence against the defendant. You also need to understand that a defendant has a right not to testify, and that the choice not to testify cannot be used as evidence of guilt.

Are any of you unable to understand or live with those concepts I have just given you? Do any of you feel that would [sic] you just not be able to set aside any kind of feelings that you might have, or potential bias or anything like that, and make a decision based entirely on the evidence presented in court and the law that is given to you, whether or not you agree with that law?

(*Id.* at 115-16). The record reflects there was no response and no hands were raised. (*Id.* at 116).

Thereafter, out of the presence of the panel, defense counsel "challeng[ed] the panel generally, based on the result of probably being prejudiced by what certain potential jurymen have said." (*Id.* at 118). Defense counsel cited instances of bias based on a variety of issues including inability to accept that Petitioner did not have the burden to establish his innocence, the fact Petitioner was not present for trial, the prior convictions, a belief that people who have been drinking behave differently, and bias in favor of law enforcement.[7] (*Id.*). According to defense counsel, at least 25% of the panel expressed some kind of bias against Petitioner and those sentiments could have tainted the rest of the panel. (*Id.* at 118-20).

The court stated that

to a certain degree it seemed to me that you [i.e., defense counsel] were leading some of them to that opinion. And clearly, none of them out there like people who drink and drive, and they're biased against people who

---

[7] With regard to bias based on the prior convictions and/or drinking, defense counsel named Mr. Beeley, Mr. Hernandez, and Ms. Diaz. The record does not reflect that Ms. Diaz made any specific comments about the prior convictions or drinking; however, she did state that she knew one of the officers involved. (Answer, Exh. P at 32). Later, after defense counsel asked Mr. Hernandez whether he had already formed an opinion about the case, which led to further discussion with Mr. Hernandez as set out *supra*, defense counsel asked: "Does anyone have the kind of concern and opinion right now that Mr. Hernandez here has?" (*Id.* at 102). Ms. Diaz responded that she had "a very high opinion of [Officer Luna] and what he does, so . . . I'm struggling with that right now." (*Id.*). After speaking further with defense counsel, Ms. Diaz concluded that she "trust[ed] herself to be focused on what I'm supposed to do. I just want it to be known that I do have those feelings right now about it. But I do feel like I can do the job." (*Id.* at 103).

- 23 -

drink and drive. I think that was pretty obvious from almost all of them.

However, they all indicated that they were willing to put that bias aside and make a decision based on the law and the evidence presented in this case.

I will do some additional questioning. But based upon their indications, they would set aside any bias. I mean, it's like, does anybody here like murderers? Well, no. We hate murderers. You know, those SOBs ought to be in prison forever. But this is an important charge, and obviously it's a charge that's going to raise emotions. Can you put those emotions aside? And I think that's what we've got here. It's an emotional thing.

A lot of people have been impacted by DUIs. And it doesn't matter if we have 35 people showing up or 100. You're still going to have that emotion coming out. The issue is can they put it aside.

(*Id.* at 127). In relevant part, the court once again advised the panel that:

The charges that Mr. Carrillo faces are charged involving driving under the influence, and one of those particular counts involves a charge that he has had prior convictions. Those are charges. It's not proof, and it's important that you understand that the fact that someone is charged with something does not mean that that has been established. In fact, it is the jury's job to determine whether the facts have been proven beyond a reasonable doubt, and that that charge is actually true or not true.

Is there anyone, any one of you who feels that the fact that there is a charge stating that he has prior convictions, that he must be guilty? Is there anyone here who has already made up your mind about that issue?

(*Id.* at 128). No one responded. (*Id.*). The court went on to single out certain jurors, including Mr. Hernandez, who assured the court that they could set aside any opinion they might have. (*Id.* at 129-30).

None of the potential jurors who expressed concern about Petitioner's prior convictions, including Mr. Hernandez and Mr. Beeley, was seated as a juror. (*See* Answer, Exh. A at 5; Answer, Exh. C at 12). Nor did counsel assert that because he had to use peremptory strikes to remove Messrs. Hernandez and Beeley, he was unable to strike potential jurors who were equally objectionable based on concerns of bias on grounds other than Petitioner's prior convictions.

## b. ANALYSIS

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States,* 561 U.S. 358, 378 (2010). "The constitutional standard of fairness requires that a defendant have 'a panel of impartial, []indifferent[] jurors.'" *Murphy v. Florida,* 421 U.S. 794, 800 (1975) (quoting *Irvin,* 366 U.S. at 722). In determining whether this standard has been met, the Supreme court has "refused to equate juror impartiality with a lack of any preconceptions about the defendant or the case." *Ybarra v. McDaniel,* 656 F.3d 984, 992 (9th Cir. 2011) (citing *Murphy,* 421 U.S. at 799-800). Instead, the Supreme Court has "held that a rebuttable presumption of impartiality normally attached if the juror could provide assurances that he or she could 'lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Ybarra,* 656 F.3d at 992 (quoting *Murphy,* 421 U.S. at 800); *see also Murphy,* 421 at 800 ("'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.'" (quoting *Irvin,* 366 U.S. at 723)). The defendant can rebut this presumption by showing that the juror actually held a biased opinion. *Ybarra,* 656 F.3d at 992.

> However, the Supreme Court has also acknowledged that, a juror's assurances notwithstanding, prejudice might be presumed "where the general atmosphere in the community or courtroom is sufficiently inflammatory," or when "most veniremen will admit to a disqualifying prejudice," such that it is probable that the community harbors "sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own."

*Id.* (quoting *Murphy,* 421 U.S. at 802-03).

One of the five counts Petitioner faced involved committing a third or subsequent violation of driving under the influence within a period of 84 months from a previous conviction. During voir dire, the trial court summarized the charges against Petitioner, which included "driving under the influence within 84 months. That would be a third violation within 84 months." (Answer, Exh. P at 41). There is no question that prior

- 25 -

convictions were an element of one of the charges the jury was required to determine.

In discussing the nature of the charges, the court never stated that Petitioner in fact had prior convictions. To the contrary, the court stressed more than once that the charges were not proof and the fact that someone was charged with a crime did not mean that has been established. (Answer, Exh. P at 44-45, 115, 128). Petitioner's reliance on the trial court's statement about the nature of the charge involving prior convictions, alone, does not merit habeas relief. The United States Supreme Court has made clear that "juror exposure to information about a state defendant's prior convictions . . . [does not] alone presumptively depriv[e] the defendant of due process." *Murphy,* 421 U.S. at 799; *cf. Skilling,* 561 U.S. at 380 ("juror *impartiality*, we have reiterated, does not require *ignorance.*") (emphasis in original). *See also United States v. Saya,* 247 F.3d 929, 936 (9th Cir. 2001) ("the Supreme Court has repeatedly stated that a juror need not necessarily be dismissed for cause even if he has knowledge of the facts surrounding the actual crime or the defendant's prior convictions.") (citing *Mu'min v. Virginia,* 500 U.S. 415, 417, 430-31 (1991); *Patton v. Yount,* 467 U.S. 1025 (1984); *Murphy,* 421 U.S 794, 799)). Instead, the analysis must "turn. . . to any indications in the totality of circumstances that petitioner's trial was not fundamentally fair." *Murphy,* 421 U. at 799. The question is "whether the jurors at [Petitioner's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton,* 467 U.S. at 1035.

Jury selection is within the province of the trial judge. *Skilling,* 561 U.S. at 386 (citations omitted). The Supreme Court has long held that:

> Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.

*Id.* (quoting *United States v. Wood,* 299 US. 123, 145-56 (1936)). Although "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*[]" *id.* "[*v*]*oir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'min,* 500 U.S. at 431. Here, the voir dire in Petitioner's case does not indicate "hostility to petitioner by the jurors

who served in his trial as to suggest a partiality that could not be laid aside." *Id.* at 800. The court inquired several times whether any of the prospective jurors felt they could not be fair and impartial, or had already made up their minds. Those who responded affirmatively and maintained that position after further discussion with the court were excused.

Mr. Hernandez and Mr. Beeley, who initially expressed concern about the priors and who were not excused by the court, were questioned extensively by the court and counsel. Each ultimately indicated that he could set aside his opinion and decide the case on the evidence presented. (*See* Answer, Exh. P at 46, 103-105). Further, neither Mr. Hernandez nor Mr. Beeley was seated as a juror. *See Skilling,* 561 U.S. at 388 n. 21 ("Peremptory challenges, too, "provid[e] protection against [prejudice] . . . .") (bracketed text in original) (quoting *Unites States ex rel. Darcy v. Handy,* 351 U.S. 454, 462 (1956)); *Mu'min,* 500 U.S. at 431 (reaching same conclusion regarding impact of pretrial publicity). "Statements by nonjurors do not themselves call into question the adequacy of the jury-selection process; elimination of these venire members is indeed one indicator that the process fulfilled its function." *Skilling,* 561 U.S. at 389 n. 24. Consequently, there is no suggestion in the record that the jurors who were ultimately selected had indicated that any of one of them had formed an opinion as to guilt based upon the prior convictions or that knowledge about the charge involving prior convictions would affect his or her ability to judge Petitioner solely on the basis of the evidence presented at trial.

The record also reflects that the trial court took great care to instruct and remind the panel on several occasions that Petitioner was innocent until proven guilty and the charges were not to be taken as proof that Petitioner committed the crimes charged. (Answer, Exh. P at 44-45, 65, 115-16, 127-28; *see also id.* at 44-45, 78, 131 (directing panel not to discuss the case amongst themselves)). It is presumed that the jury followed the court's instructions in this regard. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing Richardson v. Marsh, 481 U.S. 200, 206 1987)).

Nor does the record support Petitioner's assertion that the entire panel was tainted by comments expressed by some during voir dire. Although some of the panel expressed their opinion about the alleged prior convictions in open court, the court made clear to the panel that the charges were not proof. The court stressed, time and again, that the case must be decided on the facts presented and inquired whether any of the panel had already made up their minds. Moreover, the court put an early stop to any discussion among the panel members and there is no indication that any talking continued. On the instant record, there is no basis on which to conclude that the general atmosphere in the courtroom was inflammatory or that most "venirmen [would have] admit[ed] to a disqualifying prejudice" so as to "impeach the indifference of jurors who displayed no animus of their own." *Murphy,* 421 U.S. at 803. *See also Hayes v. Ayers,* 632 F.3d 500, 511 (9th Cir. 2011) (In *Murphy,* "the excusal of 20 of 78 veniremen (26%) for having prejudged the defendant's guilt—a clearer demonstration of partiality than mere knowledge of publicity—did not 'suggest[] a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own.'") (quoting *Murphy,* 421 U.S. at 803).

For the foregoing reasons, the record supports the conclusion that Petitioner's right to a fair and impartial jury was not abridged. Ground III fails on the merits.[8]

### E. GROUND IV

In Ground IV, Petitioner claims that his rights under *Miranda* were violated when police questioned him at the hospital. Respondents correctly point out that Petitioner did not raise this claim in the state court. "The closest Petitioner came to making this

---

[8] To any extent that the record could support a conclusion that Petitioner exhausted his federal claim with regard to Ground III so that AEDPA's deferential standard of review applies, Petitioner's claim would still fail given that, as set out above, Ground III is without merit under the de novo standard of review, which is a more favorable standard for Petitioner. *See e.g., Berghuis v. Thompkins,* 560 U.S. 370, 390 (2010) (recognizing that de novo standard of review is "the more favorable standard for [the petitioner]" than AEDPA's deferential standard, and going on to state: "Courts can …. deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review[.]").

argument was during post-conviction proceedings, when he argued that his appellate and post-conviction counsel had been ineffective for failing to present the argument. (Answer at 11 (citing Answer, Exh. I at 25-29; Answer, Exh. L at 26-30)). Because a claim that counsel was ineffective for failing to seek suppression of evidence based on an alleged constitutional violation is a distinct issue from whether the underlying alleged constitutional violation occurred, *cf., Kimmelman v. Morrison,* 477 U.S. 365, 374-75 (1986) (claims of fourth amendment violation and sixth amendment ineffective assistance for failure to raise fourth amendment violation are "distinct, both in nature and in the requisite elements of proof[]" and "reflect different constitutional values."), Petitioner failed to fairly present his Ground IV claim to the state court. As with Petitioner's other grounds for relief that are procedurally defaulted, Petitioner has not shown cause or prejudice, nor has he argued a fundamental miscarriage of justice so as to require the Court to consider his claim on the merits. Accordingly, the District Court should dismiss Ground IV as procedurally defaulted.

## III.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) as procedurally defaulted or, alternatively, dismiss Grounds I, II and IV of the Petition as procedurally defaulted and deny Ground III on the merits.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from

/ / / /

/ / / /

the District Court to do so. If objections are filed, the parties should use the following case number: **CV 14-02325-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

Dated this 9th day of May, 2017.

_____
Bernardo P. Velasco
United States Magistrate Judge